Filed 12/23/20  Marriage of Murr and Ingels CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| In re the Marriage of DAVID FRANKLIN MURR and JESSICA CHRISTINE INGELS. | C087789 |
| DAVID FRANKLIN MURR,<br><br>Respondent,<br><br>v.<br><br>JESSICA CHRISTINE INGELS,<br><br>Appellant. | (Super. Ct. No. SCSCCVFL3000944) |

In this contentious and protracted child custody dispute, Jessica Ingels (mother) challenges the Superior Court of California, County of Siskiyou's (superior court) child custody order awarding David Murr (father) sole legal and physical custody of their daughter.  Mother also asserts the superior court failed to comply with provisions of the

1

Uniform Child Custody Jurisdiction and Enforcement Act[1] (the Act) and thus erred by denying her motion for change of venue to the Superior Court of Washington, County of Spokane (Spokane court). Amicus curiae the Family Violence Appellate Project, joined by several individuals and entities, also filed a brief in support of mother's arguments. Finding no merit in the contentions, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and father separated on June 1, 2012, after being married for more than five years. Their daughter, whose custody is at issue in this case, was born in November 2010.

On October 16, 2012, the superior court issued a criminal protective order in favor of mother against father for a period of three years. The expiration date of the criminal protective order was later extended to January 14, 2018.

On May 8, 2013, father filed a request for order in the superior court seeking joint legal and physical custody of daughter. Mother counter-proposed she be awarded sole legal and physical custody. Mother alleged, among other things, that father had perpetrated domestic violence against her and had subjected daughter to abuse as well. The superior court awarded mother sole legal and physical custody and ordered supervised visits with father pending an evidentiary hearing on the domestic violence allegations. The evidentiary hearing was held on September 9, 2013.

On October 23, 2013, the superior court ruled on the submitted issue of custody and visitation. The court explained a primary issue was whether father had perpetrated domestic violence against mother such that the presumption against father being awarded sole or joint legal and/or physical custody, as provided in section 3044, subdivision (a), would apply. The court took judicial notice of three court files involving two petitions

---

[1] Family Code section 3400 et seq. All further section references are to the Family Code unless otherwise stated.

2

for restraining orders filed by mother against father and a criminal complaint filed against father for violating the 2013 temporary restraining order in favor of mother when he was found outside mother's home. Father pled guilty to violating the restraining order; he was placed on probation. The court explained that "[i]ssuance of a temporary restraining order does not constitute a finding of domestic violence and the court did not make a finding that domestic violence [had] occurred in any of the cases noted above."

The superior court found the evidence presented at the hearing was insufficient to make a finding that domestic violence had occurred. Thus, the court found the section 3044, subdivision (a), presumption did not apply and, even if the presumption did apply, father submitted sufficient evidence to overcome the presumption under section 3044, subdivision (b). The superior court awarded mother and father joint legal and physical custody of daughter; daughter's primary residence would be with mother and daughter would spend every other weekend with father pending further mediation.

On July 1, 2015, father filed a request to modify the existing custody and visitation order to award him sole legal and physical custody of daughter because mother had been precluding daughter from seeing him. Father filed a proof of service showing service was made on mother's attorney of record.[2] The hearing was scheduled for July 22, 2015, but then continued to August 12, 2015. Prior to the August hearing, mother substituted out her attorney with notification that she would be self-represented. Mother did not attend the August hearing; during that hearing, the superior court found there was proof of valid service prior to the substitution. The court continued the hearing two more times to September 30, 2015. In the interim, the court continued "the current orders from

---

**2**      The attorney served with father's petition signed a declaration on September 29, 2015, stating, among other things, father's custody modification request was not properly served on him, he had substituted out of the case, and he had transferred the file to his client. He declared he notified mother that a hearing had been scheduled for July 22, 2015, and service was defective.

March 11, 2015[,] in effect pending further orders." The record does not include a copy of the March 11, 2015, orders.

On September 30, 2015, mother and father appeared for the hearing regarding father's custody modification request. "The court had [the] parties sworn and then excused for interim visitation, given statements that both were willing to talk with the child custody counselor. When they returned to court, the child custody recommending counselor indicated they had a disagreement and stated the mother['s] and father's proposal[s] for ongoing custody and visitation. The mother's proposal was for no visitation and no custody. The father indicated a proposal for parenting time that would coincide with his parenting time for an older child. The court adopted the father's proposal as an 'interim' only and continued [the] matter further to November 4, 2015, stating again that the court would consider father's request for orders to modify custody and visitation. The court further authorized mother to appear telephonically for the November 4, 2015[,] hearing."

Father appeared at the November 4, 2015, hearing; mother did not. Father advised the court he had not had visitation with daughter; he received a text message from mother stating, "she was advised by social services to not let [daughter] be around him and that she was not coming for any visit." The superior court "directed the child custody counselor to contact social services in Shasta County regarding mother's report and to inquire if there were any open cases involving [daughter]." The court continued the hearing to December 2, 2015, and "ordered the parents to each file a declaration regarding what ha[d] happened regarding visitation since the June 15, 2015[,] orders." The record does not include a copy of the June 15, 2015, orders. The superior court "further stated that it had ongoing jurisdiction to grant father's request for sole legal and sole physical custody with no visitation to mother pending further court order."

On November 13, 2015, the child custody recommending counselor (custody counselor) filed a memorandum in the superior court. The custody counselor explained

4

she spoke with social workers at Child Protective Services in Shasta County and Siskiyou County and reviewed documents generated by their database. The counselor further noted mother was living with her boyfriend, J., whose two minor children resided with them some of the time. Five allegations of abuse were detailed, as follows:

*One*: On November 22, 2005, "an allegation was made that [mother] had hit [father's son] in the stomach with an open hand when his father was not home, leaving a small bruise on his hip, and told the child not to tell his father. [Mother] admitted only to slapping [father's son's] hand. Disposition: unfounded."

*Two*: On June 16, 2006, someone alleged father's son was being physically abused by his mother, D. Child Protective Services learned there was a domestic violence temporary restraining order protecting D. and restraining mother. "At that time there were reportedly [five] police reports of [mother] harassing [D.]" and father's son's "doctor's chart notes showed that [father's son] reported to his doctor that [mother] had told him to lie about [D.'s] medical care of him. Disposition of substantial risk and abuse against [father's son] by [D.] is unfounded."

*Three*: On September 26, 2012, someone alleged emotional abuse of J.'s two children by their mother, C., J., and mother. The allegations included, among other things, that mother had told the children "that if they 'act up' she was going to kill them" and she "would spray [C.] with pepper spray when [C.] comes to pick them up." C. said she had a criminal protective order in place restraining mother. C. and mother had previously gotten into an altercation. "The disposition was inconclusive. It appeared to the social worker that 'there are major problems in both households.' The social worker noted feeling that '[mother] is probably a major source of the problems based on her past referral history.' "

*Four*: On March 13, 2013, C. alleged general neglect of her children by J. C. also alleged, among other things, that mother had threatened one of the children. Child Protective Services found substantiation of general neglect of one of the children by J.

5

*Five*: On May 12, 2015, mother alleged "physical abuse and general neglect of [daughter] by [father]. [Daughter], then about [three] years old, was having a visit with her father in a park that occurred in January 2015. Allegations included the father bring[ing] other adults to the visit and videotaping and 'harassing' the child. There was reportedly a [criminal protective order] in effect protecting the mother and restraining the father. He leaves threatening phone call messages. She reportedly does not inform law enforcement officers when the phone messages are left. Further, it was reported that when the child was [one] year old, the father intentionally dropped their child down a flight of stairs and, the father would not change [daughter's] diapers. It was noted that the mother reported, '[t]he father currently has no visitation with the child[.]'[] This referral allegation was 'evaluated out[,]' and no investigation was conducted, based on [Child Protective Service's] internal structured decision making processes. No further action is planned to take place."

The custody counselor reported Child Protective Services had no open cases or referrals regarding daughter. She further stated mother's statement to Child Protective Services that father " 'has no visitation with the child' " appeared to be a misrepresentation. The custody counselor explained: "Based on the March 11, 2015[,] minute order, the court had ordered the father to have unsupervised visitation with [daughter] every other weekend from 6:00 p.m. on Friday to 6:00 p.m. on Sunday beginning on Friday, March 13, 2015. For [daughter], the court ordered Joint Legal Custody and Joint Physical Custody and Primary Residence with the Mother. A review hearing was set on May 27, 2015, for the court to confirm the father was able to exercise his visitations."

On December 2, 2015, mother filed a declaration generally stating father had forwarded her mail to himself, she did not believe it was in her daughter's best interest to have any further contact with father due to mental and emotional abuse, and daughter was suffering from post-traumatic stress disorder. She further declared the California Victim

Compensation Board had approved to relocate her and her children due to father's threats of violence and stalking. She also asserted father did not have a residence or car, he was unemployed and behind on child support, and had no family support. She wrote: "The police, counselors, and advocates at the [California Victim Compensation Board] have all advised me that given the extreme circumstances we are enduring[,] the safest thing to do for my family is [to] relocate out of the area, keep our address private, do not communicate with [father] or anyone he knows, and not to communicate with anyone on the internet that I do not know in person. I have done and will continue to do all these things."

On December 2, 2015, father also filed a declaration, asserting he had been trying to pick up daughter for visitation since June 15, 2015, but mother had not complied. Father detailed the various times he attempted to pick up daughter over several months.

Because the foregoing declarations were filed late on December 2, 2015, the court continued the hearing to December 9, 2015, giving the parents time to submit additional declarations. On December 9, 2015, the court continued the hearing to December 18, 2015, per mother's request to schedule another evidentiary hearing.

On December 18, 2015, father and the custody counselor were sworn in to testify; mother failed to appear. The superior court awarded father sole legal and physical custody of daughter with no visitation to mother pending further court order. The court explained it "had made earlier findings regarding valid proof of service of [father's] request to modify that was filed on July 1, 2015," and, to the extent mother contested service, any defect had been waived. The order states: "The mother has lied about Shasta social services telling her that there should be no contact between [daughter] and her father. According to [Child Protective Services's] records in Siskiyou County, mother had also prompted [father's] older child . . . to lie about the care he received while in his mother's custody, during a custody dispute between [father] and the mother of his older child. The mother's conduct in misconstruing information provided to social

7

services agencies in Shasta County and Siskiyou County is concerning, in that she appears to be the primary source of conflict in custody cases involving [father] and [his son's] mother, her boyfriend and the mother of his two children, and the pending custody proceeding between the parties in the above-entitled matter.

"The court has attempted to gain compliance with parenting times by using 'interim' orders while reminding [the] parties that the pending request was father's request for sole legal and sole physical custody and no visitation to mother pending further court order. The mother has continued to disregard any prior orders [the] court has made regarding parenting time and has actively undermined [father's] parental relationship with their daughter. It was after a contempt proceeding in the fall of 2014, after failing to comply with court orders[,] that there were further attempts to effectuate parenting time.[3] The filing on July 1, 2015[,] by [father] for sole legal and sole physical custody with no visitation to [mother] pending further court order is supported by [mother's] blatant efforts to literally cut [father] out of [daughter's] life. This is most telling in her statements to the mediator during the court's recent hearing on November 4, 2015, when she gave her 'proposal' that [father] not have any visitation and no custody.[4]

"While not in a compliant declaration form, the letter memorandum that was authored by [mother] reveals an individual who is fixated on her own beliefs and perspectives, without any regard[] for factual findings and determinations that have been made by this court or in any other legal proceedings. She remembers all 'perceived' wrongs that have ever transpired between herself and [father] (during their short marriage), she consciously distorts conduct and attitudes, she rigidly assert[s] what she

---

**3**     The record does not contain any of the 2014 filings or orders.

**4**     It is unclear whether the superior court was referring to mother's statements to the custody counselor on September 30, 2015, given that mother did not appear at the November 4, 2015, hearing and the record contains no mention of mediation on that date.

perceives as her rights and only her rights and excuses any conduct on her behalf. She exhibits 'narcissistic' parental traits, which the court considers.

"[Father,] on the other hand, has exhibited more 'child-centered' parenting traits. He is successfully co-parenting his [older] son . . . , he exhibits kindness and a sense of forgiveness towards [mother], he has not maligned her and had repeatedly stated that he was willing to try and co-parent, he exhibits a more realistic accounting of himself and others, has hopes for his children, has looked into preschool . . . for [daughter] while he is at work, and through his actions and words is concerned for [daughter's] best interest."

The court found "the conflict [wa]s being generated by the mother who ha[d] literally targeted the father with her vindictiveness" and determined there had been a material change in circumstances since the award of custody in the marital dissolution judgment because "mother ha[d] actively for almost a year . . . undermined and subverted any parenting visitation time for the father." The court "considered that [father] w[ould] facilitate [mother's] frequent and continuing contact with the child, and that [mother] w[ould] do everything to undermine and subvert his parental relationship with [daughter]."

The order states: "The court has further considered that [mother] intentionally frustrates [father's] custodial access which degrades the [daughter's] relationship with him. All support a modification as requested by [father] to sole legal and sole physical custody. This determination does not require a finding of a custodial parent's unfitness. [Citation.] Consideration of the intentional frustration of the parent-child relationship was affirmed by the California Supreme Court in [two cases] . . . .

"[¶] . . . [¶]

"[Father] is found to be an adequate parent, to be bonded with [daughter], and capable of providing a stable and nurturing home environment that provides for her health, welfare and safety, and emotional needs. [Daughter] will be safe while under her father's custodial care. [Father] has never abused his daughter, in spite of [mother's]

9

allegations to the contrary that are no[t] supported by any evidence. [Mother] if continued as the custodial parent, will continue to frustrate and dis-able father's parental relationship, will continue to align [daughter] in her favor and against the father. The court has substantial concern regarding the mother's emotional and mental state and stability given her vindictive and unrelenting behaviors, that are not supported by evidence."

Mother and daughter moved to Washington at some point in 2015. It appears from the record that the move occurred in or after December because, in one of her declarations, mother declared: "In December of 2015[, father] came to my home and beat on my doors and windows screaming my name and demanding I let him in." Father was searching for daughter between 2015 and 2017; thus, the incident could not have taken place in Washington.

On November 16, 2017, mother filed a petition for a protection order in the Spokane court. The basis for the petition was father's alleged actions between 1998 and 2017, some but not all of which involved mother. The allegations between December 2015 and November 2017 were that father harassed and threatened mother via voicemail and Facebook messages sent by him and others, father harassed mother's family and friends trying to find her, and father contacted daughter's school.

On November 30, 2017, mother and father appeared before the Spokane court regarding mother's petition. The judge ruled: "There is an existing criminal no-contact order and that doesn't seem to be stopping the issues. There are ways to find a person if you're trying to seek them out for legal purposes. Threatening to kill them is not one way to do that. [¶] Having people search her out, potentially kill her, changing the P.O. box -- I think the California courts are going to be interested in that because I have a feeling that the 2015 order of the California courts is going to unravel and is going to roll back. And it's probably not going to have this child placed with their father or with her father. It is rare that I have the sheer volume, sir, of domestically violent behavior. [¶] The

10

volume that is in this file is shocking, and substantiated, and documented. And it is very well put together. The burden of proof for me today is preponderance of the evidence and, even if it were clear, cogent, and convincing, I would find that acts of domestic violence have occurred, and that there needs to be an order put in place not only for [mother], but also for your minor child. [¶] The Court is taking emergency jurisdiction over this case until such time as California courts can do what they need to do to address the issue of the parenting order that was issued in 2015. I don't know what's going to happen there. I don't know what the evidence is going to show. But what I do know, based on what I've seen here today, is that I'm keeping this child with her mother pending that California case."

Father interjected, stating he had "a certified copy of a court order from the judge in California [who] knows about the [criminal protective order]." The judge responded: "You handed me a copy of it. I read it. I see it. I'm thinking that, based on the evidence -- I'm no thinking. I'm finding, based on the evidence that's provided here today, that, that order was likely achieved by fraud and by nefarious means, by changing addresses, by using your position in the post office to divert [mother's] mail. California courts are likely going to find that, too. [¶] That being said, two years later and two years after the fact, I am not placing your minor child back with you. So this is the State of Washington taking emergency jurisdiction over the custody of your daughter until such time as the California courts can address the situation with all the evidence that is now going to be known with the other party actually participating to see if the result of that hearing will be very, very different. I don't know the answer to that question."

The Spokane court's one-year order for protection states father "committed domestic violence as defined in [Revised Code of Washington] 26.50.010" and is "a credible threat to the physical safety" of mother and her children, including daughter.

On January 31, 2018, father filed a request for order to enforce the 2015 custody order in the superior court. Father also asked the superior court to determine it had

11

continuing jurisdiction following judicial coordination with the Spokane court. On the same day, father was charged by the State of Washington with violating the protection order issued in favor of mother. Specifically, for failing to remove and posting pictures of mother and her then husband on Facebook, and failing to remove and posting that daughter was missing and had been kidnapped.

On February 23, 2018, mother filed in the Spokane court a motion for temporary family law order to approve the parenting plan proposed by her and a petition to change a parenting plan, residential schedule, or custody order. Mother declared under penalty of perjury that, among other things, "[father had] achieved orders awarding him sole custody by default when he misrepresented to the court that [mother] had been served with his motion[ and t]he minor in this case has only ever lived with [mother] and does not know [father]." Mother further declared under penalty of perjury in accompanying documents that, among other things, "[father] has been found to have committed domestic violence on numerous occasions" and she had been granted sole custody of daughter in 2012 and 2013 with limited visitation by father.

On March 13, 2018, mother filed a motion for change of venue in the superior court, requesting that the superior court confer with the Spokane court regarding jurisdiction as provided in the Act and venue be changed to Washington. She attached four exhibits to her request: (1) a transcript of the proceedings in the Spokane court on November 30, 2017; (2) a petition for order for protection filed in the Spokane court; (3) an order for protection issued by the Spokane court on November 30, 2017; and (4) the exhibits presented to the Spokane court on November 30, 2017. Mother wrote: "Though Siskiyou County has original jurisdiction over this case, I feel the most appropriate court to take jurisdiction over ongoing custody and visitation issues is the State of Washington. Anyone with information about [daughter], including school teachers, friends, coaches, counselors, and others with information about [daughter], all

12

live in the State of Washington. The ends of justice and convenience of witnesses would be promoted by the change."

On April 11, 2018, the superior court held a hearing regarding father's request to enforce the 2015 custody and visitation order and mother's request for change of venue. Father was present at the hearing; mother was not present but was represented by counsel. In its order, the superior court wrote: "The court advised that it had conducted a preliminary [Act] telephone conference with the Honorable T. Chavez, Spokane County District Court, on Tuesday[,] April 10, 2018. The court further advised that a formal [Act] conference was scheduled to be conducted on April 24, 2018[,] at 4:00 p.m. [¶] On a preliminary basis, California has ongoing and exclusive jurisdiction pursuant to the [Act]. [Mother's] motion to change venue to State of Washington is denied." The order contains no further discussion regarding mother's motion for change of venue and no reporter's transcript was provided. The court continued the hearing on the pending matters to April 25, 2018, and ordered interim joint legal and physical custody of daughter (to which father agreed), with mother having primary residence during the then-current school year pending further orders.

On April 12, 2018, mother's counsel filed a declaration in the superior court, attaching various documents filed by mother in the Spokane court, which purportedly contained "a detailed parenting plan." On April 24, 2018, mother's counsel filed another declaration in the superior court, attaching mother's declaration filed in the Spokane court regarding her request for change of venue filed in that court. In that declaration, mother declared California to be an inconvenient forum because: (1) daughter had lived in Washington for over two years, attended school there, received mental and physical health services and dental care there, and had a strong attachment to the community; (2) all recent activity relevant to the proceedings had occurred in Washington, including the issuance of the order for protection and the criminal charges filed against father; (3) mother was financially unable to travel to California for the proceedings due to

13

unemployment and taking care of two young children; (4) father had the flexibility to travel to Washington; (5) father had the financial means to pay for representation and retained an attorney in Washington, whereas mother relied on assistance from the World Young Women's Christian Association and other domestic violence programs to help her participate in court proceedings; (6) the nature and location of all pertinent evidence was in Washington, such as daughter's counselor, school and medical records, and individuals who could provide relevant testimony regarding her best interests; (7) mother's and daughter's safety would be in jeopardy if the case proceeded in California because father had threatened to kill mother in the past and, "[d]espite multiple reports to police about these instances, no action was taken until [mother and daughter] were relocated to Spokane and [mother] made reports to law enforcement in Washington"; and (8) mother utilized various domestic violence survivor resources in Washington that were unavailable in Northern California.

On May 8, 2018, the superior court issued a tentative ruling pending further hearing on May 30, 2018, following a hearing on April 25, 2018, at which both mother and father were present and sworn in to testify.[5] The court noted mother and father would have an opportunity to respond to the tentative decision by May 23, 2018, in advance of the hearing the following week.

Regarding jurisdiction, the superior court wrote: "As determined pursuant to the [Act] conference with the Honorable Tami Chavez, Spokane County District Court, the above-entitled court has exclusive and ongoing jurisdiction regarding custody and visitation." The court described the Spokane action as follows: "In this case the Washington court granted protection orders for mother in relation to father due to behaviors and actions he took in trying to locate her, including Facebook postings.

_____

[5] The record contains no information regarding the April 25, 2018, hearing.

14

Circumstances demonstrate that these behaviors occurred after [mother] had absconded with the parties' daughter, and after [father] had sought assistance from law enforcement to locate [daughter]. The Washington Court's protective orders are between [mother] and [father] and allow for peaceful contact for visitation, and parties minor daughter . . . was deleted by order of the Washington Court."

The superior court took judicial notice of its court files pertaining to prior proceedings involving temporary restraining orders against father and dissolution of the couple's marriage. The court noted there were no findings of domestic violence in its foregoing files.

The court stated: "The facts in this case demonstrate the mother has intentionally frustrated the parent-child relationship between [daughter] and her father, and focused her efforts at degrading the relationship between [daughter] and her father. [Mother's] psychological functioning has to be considered when her mental health is impacting parenting. [Mother] has exhibited symptoms indicating a personality disorder throughout the proceedings in this case. She is inflexible, boastful and conceited of her own strengths, consciously distorts conduct and attitude, rigidly asserts her rights and easily excuses herself, exhibits paranoia and is maladaptive. She has exhibited these traits over years." As to father, the court stated: "There has been no showing that the father is an unfit parent. He has been exercising shared physical custody of his older son . . . for many years, and is currently the primary residence parent. [Father] has demonstrated his abilities to parent and co-parent for many years. As demonstrated in the above-entitled proceeding, [father] has been trying to exercise joint legal and shared physical custody with [mother] over many years. Even when [mother] was finally located and appeared in court on April 23, 2018, [father] agreed with the court's suggestion that [daughter] reside with [mother] for the remainder of the current school year."

The superior court's tentative ruling stated the parents would meet for an exchange of daughter's summer visitation on June 18, 2018, in Spokane. The court encouraged

15

mother "to seek counseling, including a psychological evaluation that could assist her in confronting her mental health and behavior issues that have led to her relentless course of action which conflicts with reality and facts. Mother's behaviors are obsessive and concerning." The next hearing was set for July 18, 2018, when the court was to consider ongoing orders for joint legal and physical custody. The court wrote: "However, in the event [mother] fails to bring [daughter] to the exchange with [father] on June 18, 2018, and upon [father's] declaration filed with the court setting forth that he was present at the time and place in these orders for exchange, and that [mother] did not appear with [daughter] for the exchange, the court will order that [father] have sole legal and sole physical custody of [daughter] with no visitation to [mother]. The court will further order appropriate child abduction orders pursuant to Family Code [section] 3048."

Mother filed a response to the tentative ruling on May 23, 2018, expressing concern regarding her daughter's transition to visitation with father. Mother proposed a plan providing for text messaging and voice calls between daughter and father during daughter's counseling sessions, prior to in-person contact. Mother stated the proposed plan was in accordance with her discussion with daughter's counselor. She attached as an exhibit a letter on Lutheran Community Services Northwest letterhead signed by someone whose name had been redacted.

On May 30, 2018, mother and father attended the court hearing and gave sworn testimony; the record does not include a reporter's transcript. The court did not find pertinent the letter from Lutheran Community Services Northwest, stating the observations of the counselor based on information provided solely by mother was concerning. The court issued its findings and orders, adopting the findings and orders set forth in its tentative ruling except for the specific ruling regarding custody and visitation. The court ordered mother to appear in person with daughter on June 18, 2018. The court explained: "The court has discretion to interview directly a minor child in a custody and visitation dispute. The court will also request that the court's child custody

16

recommending counselor be present and available to conduct an interview with [daughter] and the parents, if so directed by the court." The court also scheduled another hearing to consider further custody and visitation orders and ordered Skype or Facetime visits between father and daughter in the interim. The order concludes with: "Further the parents were admonished and so advised, that if [mother] does not appear in person with [daughter] on June 18, 2018[,] at 8:30 a.m., the court will have no alternative but to issue an order that [father] have sole legal and sole physical custody with no visitation to [mother] pending further court order."

On June 15, 2018, the custody counselor submitted a memorandum to the superior court to provide an update regarding the order for daughter to have Skype or Facetime visits with father during father's counseling sessions. The counselor explained, in pertinent part: "On June 1, 2018, the father informed me that the next counseling session was set for June 6, 2018 . . . . I called [mother's] attorney . . . , who informed me that she will be in contact with the mother about the counseling session. She gave me a text message number for the mother asking I provide the mother's text number only to the counselor and not the father. I called the counselor directly with the confidential information.

"On June 6 and 7, 2018, [father's] counselor . . . left me detailed voice mail messages indicating the number I had provided was incorrect and that the father had the correct number, reportedly a phone number the mother has used for years as a business number. The counselor had called the mother's number and the father confirmed the voice message was the mother's voice. There was no answer to the attempted contacts to the mother . . . that day. At about 4:30 p[.]m[.], the mother reportedly responded by sending 12 steam-snorting emoji's. The counselor sent back to the mother the text message, 'Hello.' The mother reportedly responded by texting back, 'NO!'.

"On June 13, 2018, the second counseling session for which [daughter] was to be present by Skype . . . , the counselor attempted to communicate with the mother. The

17

mother did not answer. At 2:57 p[.]m[.] that day the counselor was called by Spokane Washington Sheriff's Deputy Hall, stating there is a restraining order in effect protecting the mother and restraining the father. The counselor explained to the Deputy that he was following a current court order to facilitate Skype visits between the father and the child. Reportedly, the Deputy sounded frustrated."

On June 18, 2018, mother and daughter failed to appear for the court hearing. The superior court noted it had received the custody counselor's June 15, 2018, memorandum, and that the custody counselor filed a further memorandum on June 18, 2018, attaching an e-mail received from mother.[6] The superior court attached to its order two orders issued by the Spokane court ordering the dismissal of the action there pending between mother and father, and modifying the protection order to remove daughter as a protected party.

In its order, the superior court explained it "had anticipated that the court's child custody recommending counselor would be available to interview [daughter], and the court would also have the opportunity." It noted its authority to consider the intentional frustration by one parent of the other parent's custodial access: "In particular, where one parent's intentional frustration is focused on degrading the child's relationship with the other parent. The conduct in this case has played out over a period of time. Mother has sabotaged father's relationship with his daughter and continues to confound agencies and others with whom she has contact as to her maladaptive perspectives."

The order states: "More concerning, the mother has actively engaged in behaviors and a set of strategies to undermine and interfere with [daughter's] relationship with her father. This is parental alienation which constitutes emotional abuse of [daughter]. Mother has bad-mouthed [father] to [daughter], and limited contact and done everything

---

**6** The custody counselor's June 18, 2018, memorandum was not included in the record, nor was mother's e-mail attached to that memorandum.

18

she can to erase [father] from [daughter's] life.  She forbids pictures of [father] and only refers to [father] in the most [menacing] and hostile manner.  Mother is forcing [daughter] to reject her father, creating the impression that [father] is dangerous to [daughter], forcing [daughter] to choose and limiting [daughter's] contact with other extended family members, her half-brother . . . and her grandfather who was trying to assist [father] in exercising his visitation in California.  The message [mother] is conveying to [daughter] is that (1) she is the only parent who loves her and that [daughter] needs [mother] to feel good about herself, (2) that [father] is dangerous and unavailable, and (3) that pursuing a relationship with [father] would jeopardize [daughter's] relationship with her mother.  These are all presenting issues of psychological maltreatment of the [daughter].  This is demonstrated in the report of what [mother] has told her counselor in Spokane, that [mother] has allowed [daughter] to come to her own decisions about her father, after [mother] has done everything to sabotage the relationship and prevent [daughter] from even having any contact with her father for years.  [Daughter] is only [seven-and-one-half] years old, and has been under the exclusive influence of her mother for this protracted period of years.  This should have been a 'red flag' regarding mother's emotional abuse of [the] child.

"When [father] was searching for [daughter], he engaged in social media activities that were [the] basis of the protection orders issued by the Washington State Court.  This behavior is also not condoned.  The conduct that [father] undertook to locate his daughter and [mother] through social media was not appropriate and it constituted the basis for the family protection orders issued by the Washington State Court.  However, the Washington State Court also dismissed its case where [mother] was seeking to modify the custody and visitation orders from California, and deleted [daughter] as a protected party in the family protection order case, finding that California continued to maintain exclusive ongoing jurisdiction regarding custody.

19

"It was also[] recognized by the courts during the [Act] conference that this activity was subsequent to [mother] absconding with [daughter] and failing to comply with the court's custody and visitation orders. This does not off-set [t]hat [mother] has undertaken to sabotage [father's] parent-child relationship with [daughter] and her concerted efforts of parental alienation. [Mother] has not accurately reported the status of early cases in [the superior court], where there were no findings regarding domestic violence. The court has attached as exhibit C and incorporated by reference its findings and orders of May 30, 2018[,] as [the] court had taken judicial notice of findings and orders of other cases between the parties. Child victims of parental alienation are not aware that they are being mistreated and often cling to the favored parent, even when that parent's behavior is harmful to them. It is often important for mental health professionals to be involved in cases of parental alienation.

"[Daughter] has the right to know and be cared for by both of her parents. It has been argued that removal and denial of contact in the absence of neglect and abuse constitute cruel and unusual punishment for the child. Mother is not a psychologically or emotionally healthy parent. Pursuant to Family Code [sections] 3011, 3020, 3040 and 3041, the court has broad discretion to adjudicate custody in the best interests of the child. Custody orders must be made to assure the child's frequent and continuing contact with both parents, Family Code [section] 3020. In considering the best interests of the child, the court may consider one party's attempts to interfere with the other party's regular contact with the child, pursuant to Family Code [section ]3046[, subdivision ](b). The court so finds that it is in [daughter's] best interest to be in the care and custody of her father . . . ."

The court ordered father to exercise sole legal and physical custody of daughter, subject to supervised visitation for mother, as agreed to by father. Father enforced the June 18, 2018, order and took physical custody of daughter on January 3, 2019. Mother appeals.

20

DISCUSSION[7]

I

*The Superior Court Did Not Abuse Its Discretion In Denying*

*Mother's Motion For Change Of Venue*

Mother argues the superior court's denial of her motion for change of venue failed to comply with two mandatory provisions of the Act:  (1) the superior court failed to disclose to the parties the substance of its conference with the Spokane court, as required under section 3410; and (2) the superior court failed to apply the statutory factors pertinent to the inconvenient forum analysis, as required under section 3427.  She further argues that application of the inconvenient forum factors demonstrates Washington is the more appropriate forum and requests that we reverse the order.  We disagree with mother on all points.

A

*Mother Forfeited The Section 3410 Record Requirement Argument*

A California court may communicate with a court in another state concerning a proceeding arising under the Act, such as a child custody proceeding.  (§ 3410, subd. (a).)  The court may allow the parties to participate in the communication with the other state's court, or, if they do not participate, the parties "must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made." (§ 3410, subd. (b).)  Also, "[a] record must be made of the communications between the courts discussing matters, other than schedules, calendars, court records and similar matters, under the Act.  (§ 3410, subds. (c), (d).)  The record must be 'inscribed on a tangible medium' or stored in an electronic or other medium, and be retrievable in perceivable form.  (§ 3410, subd. (e).)" (*In re C. T.* (2002) 100 Cal.App.4th 101, 111.)

---

**7**    Mother's request for judicial notice is granted.

Mother asserts the superior court erred in failing to record the substance of its communications with the Spokane court in violation of section 3410. She believes the error deprived her of her statutory " 'opportunity to fairly and fully present facts and arguments on the jurisdictional issue before a determination [was] made.' " And, she argues the error was prejudicial because, if the superior court and Spokane court failed to discuss "the Spokane court's finding that [father] had committed domestic violence," a factor pertinent to the inconvenient forum analysis, it is reasonably probable a result more favorable to her would have been reached in the absence of the error.

Mother is correct insofar as it appears the superior court did not make a record regarding the substance of its communications with the Spokane court; at least, the record contains no summary of what was discussed. But the record requirement is procedural not jurisdictional in nature; thus, a party's failure to object to noncompliance with the record requirement in the trial court forfeits any arguments in that regard for purposes of appeal. (*In re A.C.* (2017) 13 Cal.App.5th 661, 671-672.) That is because any defect in reporting was correctible if timely raised in the trial court. Mother does not assert, and the record contains no indication, that she objected to the superior court's conclusory statements regarding the communications with the Spokane court or that she requested a record of those communications. Mother's attorney was present at the hearing and presumably had an opportunity to present argument on the issue. Mother's argument is, therefore, forfeited.

B

*California Is The Appropriate Forum*

Under section 3427, subdivision (a), of the Act, a California court with "exclusive, continuing jurisdiction to make child custody determinations 'may decline to exercise its jurisdiction at any time if it determines it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.' " (*In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1098.) In considering whether it is appropriate

22

for a court of another state to exercise jurisdiction, "the court shall allow the parties to submit information and shall consider all relevant factors, including:  [¶]  (1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.  [¶]  (2) The length of time the child has resided outside this state.  [¶]  (3) The distance between the court in this state and the court in the state that would assume jurisdiction.  [¶]  (4) The degree of financial hardship to the parties in litigating in one forum over the other.  [¶]  (5) Any agreement of the parties as to which state should assume jurisdiction.  [¶]  (6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child. [¶]  (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.  [¶]  (8) The familiarity of the court of each state with the facts and issues in the pending litigation."  (§ 3427, subd. (b).)

"[T]o determine whether California is an inconvenient forum, the trial court must consider and weigh all of the factors enumerated in section 3427, subdivision (b), relevant to the case before it.  [Citation.]  The court has broad discretion with respect to weighing the applicable factors and determining the appropriate weight to accord to each. However, the court cannot ignore any relevant circumstance enumerated in section 3427, subdivision (b); rather, the trial judge must recognize and apply each applicable statutory factor."  (*Brewer v. Carter* (2018) 218 Cal.App.4th 1312, 1320.)

Mother argues the "court failed to engage in any section 3427 analysis."  In her view, "[p]roper consideration and weighing of the relevant statutory factors under section 3427[, subdivision ](b)[,] establishes by substantial evidence that the Spokane court is a more appropriate forum to litigate this custody matter."  We disagree.

"Under the doctrine of 'implied findings,' if the record is silent, we must presume the trial court fully discharged its duty to consider all of the relevant statutory factors and made all of the factual findings necessary to support its decision for which there is substantial evidence.  [Citations.]  Where the record reflects what the court actually did,

23

however, these presumptions do not apply.  [Citation.]  [¶]  '[And of] course, each implied finding must be supported by substantial evidence.'  [Citation.]  '[The] basis for application of the substantial evidence rule is the theory that the trier of fact is in the best position to determine the value and weight to be attributed to evidence.  [Citation.]  The rule thus operates only where it can be presumed that the court has performed its function of weighing the evidence.  If analysis of the record suggests the contrary, the rule should not be invoked.' "  (*Brewer v. Carter*, *supra*, 218 Cal.App.4th at p. 1320.)

Mother argues the implied findings doctrine cannot "be relied upon to affirm the court's jurisdictional order in the complete absence of ***any*** evidence the trial court carried out its mandatory statutory duty."  She appears to argue that, when the record is silent as to whether the trial judge weighed the evidence, as here, no presumption of correctness applies.  She is mistaken.  As *Brewer* makes clear, when the record is silent, the presumption applies.  (*Brewer v. Carter*, *supra*, 218 Cal.App.4th at p. 1320.)  *Kemp Brothers Construction*, upon which mother relies, does not provide otherwise.  (*Kemp Brothers Construction v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474.)  In that case, the appellate court said that, "[w]here the record demonstrates the trial judge did not weigh the evidence, the presumption of correctness is overcome."  (*Id*. at p. 1477.)  The court cited *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1384 for:  " 'When the record clearly demonstrates what the trial court did, we will not presume it did something different.' "  (*Kemp Brothers Construction*, at p. 1477.)  *Kemp Brothers Construction* thus does not support mother's argument.

We presume the superior court discharged its duty and consider whether the court abused its discretion in denying the motion.  (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 513 [§ 3427 determination subject to abuse of discretion review].)  We conclude it did not.

Mother argues the first factor -- whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child

24

-- weighed in favor of Washington because the protection order established domestic violence had occurred, and "Washington is *far* better positioned to enforce the protective order and otherwise provide for the protection" of mother and daughter because the superior court has "ma[de] clear that it doesn't believe that [father] has *ever* committed domestic violence."

We agree with mother that the Spokane court's protection order must be given full faith and credit. Congress promulgated a statute providing, in pertinent part, "[a]ny protection order" issued by one state, if consistent with the statute's jurisdiction and due process requirements, "shall be accorded full faith and credit by the court of another [s]tate . . . as if it were the order of the enforcing [s]tate." (18 U.S.C., § 2265, subd. (a).) The jurisdiction and due process requirements are: (1) the issuing state must have personal and subject matter jurisdiction under the laws of that state; and (2) the party against whom the order is sought must have reasonable notice and an opportunity to be heard to protect his or her due process rights. (18 U.S.C., § 2265, subd. (b).)

The Spokane court's protection order met the jurisdiction and due process requirements for full faith and credit. Father did not and does not argue otherwise. Father attended the hearing in the Spokane court and was given an opportunity to present his case. The protection order further states, "[t]he court ha[d] jurisdiction over the parties, the minors, and the subject matter" and father "had reasonable notice and an opportunity to be heard."

Although we agree with mother that the protection order must be given full faith and credit, we do not find her argument that the factor weighed in favor of Washington persuasive. We instead view the factor as neutral. There is no evidence in the record (other than mother's unsubstantiated assertions) that the superior court or California law enforcement would fail to enforce the Spokane court's protection order, if father violated it, or would fail to protect mother or daughter if domestic violence occurred. Indeed, the

25

superior court previously issued two restraining orders in favor of mother and father was previously charged with and pled guilty to violating one of those orders.

Amicus curiae the Family Violence Appellate Project argues "the Siskiyou Court gave no weight at all to David's domestic violence against Jessica, nor to the related factors of whether that violence was likely to continue and which state could best protect the parties and the child, because the Siskiyou Court summarily and erroneously decided that no abuse had ever occurred," citing the superior court's June 18, 2018, order. It further asserts we "should reverse and remand with instructions that the Siskiyou Court undertake the proper analysis, and give due weight to the prior findings of abuse both in California and in Washington, in order to protect Jessica and the child and to promote the important public policies behind California's legislation protecting domestic violence survivors and their children who have also been impacted by abuse."

First, as we explained *ante*, the presumption of correctness applies to the superior court's ruling. The June 18, 2018, order was issued after the superior court denied the motion for change of venue and does not assist in our abuse of discretion review. Second, there have been no "prior findings of abuse" in California. In 2013, after an evidentiary hearing, the superior court found mother had presented insufficient evidence to make a finding that domestic violence had occurred. It does not appear that mother thereafter raised any domestic violence allegations in the superior court, apart from providing the Spokane court's protection order. We thus find no merit in the amicus curiae's argument.

While, as mother appropriately points out, the second factor -- the length of time daughter had resided outside of California -- weighed in favor of Washington, we note that, at the time of the hearing, daughter had lived in California for approximately four to five years and in Washington for approximately two to three years. This case is not, therefore, like *Clark*, upon which mother relies. In *Clark*, Oregon was determined to be the appropriate forum where, among other things, the child whose custody was in

26

question spent one-and-one-half years in California before briefly moving to Arkansas and then living in Oregon for five years  (*Clark v. Superior Court* (1977) 73 Cal.App.3d 298, 302, 308-309.)  *Clark* is further distinguishable because the appellate court relied on a guiding principle espoused by our Supreme Court " 'that ordinarily the California court should exercise its discretion to issue a stay of the proceedings in this state to permit a final adjudication in the state of the parent entitled to custody under existing decrees.' " (*Id*. at p. 310, quoting *Ferreira v. Ferreira* (1973) 9 Cal.3d 824, 842.)  In *Clark*, the parent entitled to custody under the existing decree was the mother, who lived in Oregon. (*Clark*, at pp. 302-303.)  Here, in contrast, at the time of the hearing, father was entitled to custody under the December 2015 order (the temporary emergency order of the Spokane court notwithstanding) and he was living in California.

We conclude the third, fourth, and fifth factors did not weigh in either state's favor.  The parties do not have an agreement as to which state should assume jurisdiction. (§ 3427, subd. (b)(5).)  Further, the distance between the states is significant and would render a financial hardship on the party in the state that does not have jurisdiction. (§ 3427, subd. (b)(3), (4).)  Mother argues she is financially unable to litigate the matter in California, referring us to the declaration she filed in the Spokane court on April 17, 2018, which was later filed in the superior court on April 24, 2018.  This argument was not before the superior court when the motion for change of venue was denied on April 11, 2018.  We further note that section 3430, subdivision (d), provides:  "If a party to a child custody proceeding who is outside this state is directed to appear under subdivision (b) or desires to appear personally before the court with or without the child, the court may require another party to pay reasonable and necessary travel and other expenses of the party so appearing and of the child."

As to the sixth factor -- the nature and location of the evidence required to resolve the custody dispute -- mother argues the majority of the evidence relating to daughter's best interests, "including her school and medical records, and her mental health and

27

community support system, are located in Washington." She further asserts "the evidence of [father's] repeated stalking and harassment is located in Washington and the Spokane court and Spokane County Sheriff are familiar with the underlying facts." We disagree that this factor weighed in favor of Washington; we view the factor as neutral. Mother fails to mention there was also evidence pertinent to the custody dispute in California, such as daughter's ties to extended family members, including her half brother and grandfather. Additionally, the superior court had access to the pertinent evidence and witnesses in Washington, as provided by statute.

The Act, adopted in both states (§ 3400 et seq.; Revised Code of Wash., § 26.27.011 et seq.), provides the means of mitigating the inconvenience to witnesses and parties living outside the forum state. A court may direct that evidence be taken by deposition outside the forum state (§ 3411, subd. (a)) and may permit an out-of-state resident to be deposed or to testify by telephone, audiovisual means, or other electronic means before a designated court or at another location in the other state. (§ 3411, subd. (b).) Also, a California court can request that the other court hold an evidentiary hearing, order a person to produce or give evidence, order that an evaluation be made with respect to the custody of a child, and forward a certified copy of the transcript of the hearing, the evidence otherwise presented, and any evaluation prepared in compliance with the request. (§ 3412, subd. (a).)

A California court may further appoint an investigator to examine the health, safety, welfare, and best interests of the child. (§ 3110 et seq.; Cal. Rules of Court, rule 5.220.) Where, as here, one party resides in another jurisdiction, the investigator may cooperate with professionals in the other jurisdiction for assistance in gathering information (Cal. Rules of Court, rule 5.220(f)) and every court is required to develop procedures for expeditious and cost-effective cross-examination of evaluators, including videoconferences, telephone conferences, audio or video examination and scheduling of

28

appearances (Cal. Rules of Court, rule 5.220(i)).  Further, the cost of the investigator can be allocated between the parties.  (§ 3112; Cal. Rules of Court, rule 5.220(d)(1)(D).)

The seventh factor did not weigh in favor of either state.  Each court has the ability to decide the issue expeditiously and has procedures necessary to present evidence. Mother provides no argument to the contrary.

The eighth factor -- the familiarity of the court of each state with the facts and issues in the pending litigation -- weighed heavily in favor of California.  The superior court was certainly more familiar with the facts and issues in the child custody dispute given that the court had presided over the matter since 2013 and had issued several orders.  Moreover, the pertinent question before either court was whether to enforce, vacate, or modify the superior court's December 2015 order.  The superior court was in the best position to make that determination.  That daughter "established a new life in Spokane" and the "most recent instances of domestic violence ha[d] occurred and been litigated in Washington," as mother asserts, does not change the superior court's familiarity with the facts and issues pertaining to the child custody dispute.

After weighing the pertinent factors, we conclude the superior court did not abuse its discretion in denying mother's motion for change of venue based on inconvenient forum.

II

*The Superior Court Did Not Abuse Its Discretion By Granting Father's Petition*

"The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.  [Citation.]  The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child.  We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked."  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)

29

Mother argues the superior court's June 2018 child custody order must be vacated and the matter remanded because the superior court: (1) impermissibly retaliated against her to punitively deny her custody of daughter by relying on section 3430, subdivision (b); (2) erred in failing to apply the section 3044 presumption against awarding sole or joint custody to a parent who has committed domestic violence; (3) failed to make the necessary findings under section 3044, subdivision (b), that the presumption was rebutted (which father failed to prove)[8]; and (4) erred in relying on mother's purported " 'interference' " with father's parental relationship. We find no merit in these arguments.

We begin with mother's section 3044 arguments. Section 3044, subdivision (a), provides: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, or against the child or the child's siblings . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and 3020. This presumption may only be rebutted by a preponderance of the evidence." Section 3044, subdivision (b), provides that, to overcome the presumption in section 3044, subdivision (a), the trial court shall make specific findings.

---

[8]    In the subheading, mother also states "the findings the court did make rely on the court's unsupported, *sua sponte* diagnosis that [mother] suffers from a discredited psychological condition." (Capitalization omitted.) Mother did not develop the statement into an argument in the body of her brief. We, thus, do not consider the statement to be an argument. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [failure to support a point with argument and authority will result in issue being deemed forfeited]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [failure to support argument with necessary citations to the record will result in argument being deemed forfeited].)

Mother did not argue in the superior court that the presumption under section 3044 applied, and she does not argue otherwise on appeal. Indeed, mother did not raise section 3044 in her response to the superior court's May 8, 2018, tentative ruling. By failing to raise section 3044, neither the superior court nor father were on notice that mother was relying on the presumption. "It is a firmly entrenched principle of appellate practice that litigants must adhere to the theory on which a case was tried." (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316.) To permit a belated change in strategy would be unfair to father, who perhaps would have presented additional evidence to rebut the presumption and made additional legal arguments. (See *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [permitting a party to adopt a new and different theory on appeal is unfair to the trial court, and " 'manifestly unjust to the opposing litigant' "].) Because mother failed to raise the issue of the domestic violence presumption under section 3044 below, she forfeited the argument. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686; *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002.)

Anticipating our conclusion, mother argues she did not forfeit the argument because: (1) section 3044, subdivision (g), provides that, when a custody order is sought and an allegation of domestic violence has been made, the trial court must determine whether section 3044 applies;[9] and (2) section 3044, subdivision (h), provides the court shall inform the parties of the existence of this section.

The problem with mother's reliance on section 3044, subdivision (g), is that the subdivision was added to section 3044 in September 2018 and effective January 1, 2019. (Stats. 2018, ch. 941, § 3 (Assem. Bill No. 2044).) The custody order at issue in this appeal was, however, entered on June 18, 2018. The statutory provision, therefore, is not

---

[9] Mother's appellate opening brief quotes the language from section 3044, subdivision (g), but does not identify the pertinent statutory provision.

31

pertinent to our analysis because it was not in effect when the superior court issued its ruling.

Section 3044, subdivision (h), also does not assist mother. That provision states: "In a custody or restraining order proceeding in which a party has alleged that the other party has perpetrated domestic violence in accordance with the terms of this section, the court shall inform the parties of the existence of this section and shall give them a copy of this section prior to custody mediation in the case." (§ 3044, subd. (h).) The provision was intended "to ensure that parties *in custody mediations* be informed about and provided a copy of section 3044." (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 825 [analyzing the provision when it was located in § 3044, subd. (f), before it was renumbered].) Thus, the provision "requires a court in 'any custody or restraining order proceeding' involving domestic violence accusations to provide the statutory notice to the parties before they enter into custody mediation." (*Sabbah*, at p. 825.) We find no mention of custody mediation pertaining to the challenged order. Moreover, mother was aware of section 3044 well in advance of 2018 because the superior court considered her request to apply the presumption in 2013. Thus, mother cannot show prejudice by any purported lack of notice. We do not find mother's discussion of provisions under the Indian Child Welfare Act[10] pertinent to the analysis.

*Ellis* does not assist mother either. (*Ellis v. Lyons* (2016) 2 Cal.App.5th 404.) In that case, the mother maintained in the trial court and on appeal that the Massachusetts court's entry of the protective order against the father meant section 3044 had to govern the court's determination of her request to modify the existing custody order for the minor. (*Ellis*, at p. 415.) The same is not true here.

---

[10]    Title 25 United States Code section 1902 et. seq.

32

Amicus curiae argues section 3011, subdivision (e)(1),[11] "provides that where allegations concerning abuse by one parent against another have been brought to the attention of a court in a custody matter, if the court awards either sole or joint custody to the allegedly abusive parent, it 'shall' state its reasons in writing or on the record." This provision, it argues, required the superior court to specifically mention and discuss each of the seven section 3044 factors, as discussed in *Jaime G.* (Citing *Jaime G. v. H.L.* (2018) 25 Cal.App.5th 794, 805.) That requirement, however, applies only when a trial court has found the section 3044 presumption applies and the accused abuser has rebutted the presumption. (*Jaime G.*, at p. 805.) Here, the superior court was not required to consider section 3044 in the absence of mother raising it.

We next consider mother's argument that the superior court impermissibly retaliated against her by *presumably* relying on section 3430, subdivision (b), to punitively deny her custody of daughter. That provision states: "If a party to a child custody proceeding whose presence is desired by the court is outside this state, the court may order that a notice given pursuant to Section 3408 include a statement directing the party to appear in person with or without the child and informing the party that failure to appear may result in a decision adverse to the party." (§ 3430, subd. (b).) Mother asserts the statute should not be applied punitively and evidence that the superior court did so includes the superior court's failure to comply with section 3044 and its reliance on mother's relocation to Washington for its conclusion that mother frustrated father's attempts to coparent and sought to alienate daughter from father. We do not agree that the superior court acted punitively.

---

[11] Subdivision (e) was renumbered as subdivision (a)(5)(A), effective January 1, 2020. (Stats. 2019, ch. 551, § 1 (Sen. Bill. No. 495).)

It is clear from the history in this matter that the reason the superior court ordered sole legal and physical custody to father was because mother refused to let daughter have a relationship with father and not because mother relocated to Washington.

In its December 2015 order, in which father was also awarded sole legal and physical custody of daughter, the superior court noted mother had declined to perform in accordance with custody orders going back to 2014 and the court had been issuing interim orders to gain her compliance. The court explained it had considered that mother "intentionally frustrates [father's] custodial access which degrades the [daughter's] relationship with him." There is no indication the superior court knew mother had moved to Washington when it issued the December 2015 order.[12] The same judge who issued the December 2015 order issued the June 2018 order. Also, in the May 2018 tentative ruling, filed after the superior court learned mother had moved to Washington, the court stated it would "consider ongoing orders for joint legal and joint physical custody and consideration of [daughter] being with her mother as primary residence during the school year and her father primary residence during the summer." In its May 30, 2018, order, the superior court further indicated its intent "that the current orders for shared custody and primary residence during [the] school year with mother could remain in effect if there is the frequent and regular timeshare with father, which would be primarily holidays and summer given the distance between the parent's homes."

We conclude there is no basis for mother's assumption that the court used mother's relocation as the basis for finding she was alienating daughter from father; the basis for the finding was mother's affirmative actions in keeping daughter from father. Further, inasmuch as the superior court was not required to consider section 3044 in the

---

**12** In her December 2, 2015, declaration, mother declared others advised her "the safest thing to do for my family *is* [to] relocate out of the area" and "I have done and will continue to do all these things." (Italics added.)

34

absence of mother raising the argument, as explained *ante*, the failure to apply the section is not evidence that the court acted punitively either.

Amicus curiae argues the superior court threatened mother in its May 2018 order that it would grant sole legal and physical custody to father if she did not appear at the June 2018 hearing and "made good on this threat" in its June 2018 order. Thus, in its view, "[t]he award of custody was in fact used as a means of punishing a parent who violated a court order" because "[t]he sole factor that [the] Siskiyou Court ordered would trigger an award of sole custody to [father] was whether [mother] appeared for the June 2018 hearing with the parties' minor child." Amicus curiae further argues the superior court failed to consider the mandatory factors in sections 3011 and 3020 related to domestic violence.

We do not read the superior court's orders as narrowly as amicus curiae does. Specifically, we do not read the court's admonition to indicate that mother's failure to appear at the hearing would be the *sole* deciding factor in granting father's request to enforce the December 2015 order. Instead, it is clear from the multitude of orders and the discussion therein that the superior court believed it was in daughter's best interest for the parents to have joint physical and legal custody of daughter if possible but, in the event mother refused to allow for joint custody (as she had in the past), the superior court believed daughter's best interests were served by granting sole custody to father, as explained in the June 2018 order.

We also disagree with amicus curiae's assertion that the superior court failed to consider the "domestic violence" factors in sections 3011 and 3020. As amicus curiae accurately states, the superior court had to consider, under section 3011, then subdivision (b), any history of abuse by one parent against the other parent, and the state's public policy as stated in section 3020, subdivision (a), "that the perpetration of . . . domestic violence in a household where a child resides is detrimental to the child." There was, however, no finding that any domestic violence had occurred *in a household*

35

*where daughter resided.* And, as to the history of abuse, the superior court discussed the Spokane court's protection order in its May 2018 order, explaining it was issued "due to behaviors and actions [father] took in trying to locate [mother], including Facebook postings," and took judicial notice of the prior proceedings involving allegations of abuse in the superior court, which the court explained did not contain findings of domestic violence. Mother does not challenge the superior court's findings with respect to the basis for the Spokane court's protection order for lack of substantial evidence. The superior court also discussed the Spokane court's protection order in the June 2018 order, explaining father "engaged in social media activities that were [the] basis of the protection orders issued by the Washington State Court" and that such actions were not condoned. The superior court thus considered the history of abuse as required by section 3011.

Finally, mother argues the superior court erred in finding mother's interference with father's parental relationship with daughter supported the custody determination because: (1) section 3046, subdivision (b), upon which the superior court relied, does not apply; (2) the cases upon which the superior court relied are inapplicable in the domestic violence context; and (3) the superior court's finding that mother's interference with father's relationship with daughter constituted "parental alienation which constitutes emotional abuse" of daughter is unsupported in the absence of expert testimony and having interviewed daughter, and the theory of parental alienation does not have strong empirical support and has been widely criticized.

Considering mother's second argument first, we note the superior court cited three cases for the proposition that "the trial court may consider the intentional frustration of the parent-child relationship when determining custody and visitation orders, including move-away orders" -- *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, *In re Marriage of Burgess*, *supra*, 13 Cal.4th at page 25, and *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072. Mother asserts these cases have no application in this matter

36

because the cases "address whether a court may consider the good- or bad-faith motives behind the relocations of a custodial parent, *in the absence of any allegations of abuse*." She relies on a footnote in *In re Marriage of LaMusga* following the statement that, "[e]ven if the custodial parent has legitimate reasons for the proposed change in the child's residence and is not acting simply to frustrate the noncustodial parent's contact with the child, the court still may consider whether one reason for the move is to lessen the child's contact with the noncustodial parent and whether that indicates, when considered in light of all the relevant factors, that a change in custody would be in the child's best interests." (*In re Marriage of LaMusga*, at p. 1100.) The footnote states: "We have no occasion in this case to consider circumstances in which a reason for a proposed move is to minimize contact with a noncustodial parent who has engaged in a pattern of abuse of the custodial parent or the children or who has a substance abuse problem." (*Id.* at p. 1100, fn. 5.)

We read the footnote to suggest that, if a parent's reason for relocation is to limit the other parent's contact with the child, then the determination of whether a change in custody is in the best interests of the child may be affected by whether the other parent has engaged in domestic violence. In other words, domestic violence may be a factor to consider in the best-interests-of-the-child analysis in move-away cases. (See *F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 28 [in a move-away case, if the parent rebuts the § 3044 presumption, then the court must still consider the domestic violence "together with all of the *LaMusga* and other relevant factors" in determining the child's best interests].)

This footnote does not impact the general proposition for which the superior court cited the cases, i.e., that a court may consider a parent's intentional frustration of the child's relationship with the other parent in determining custody. That proposition is sound. (§ 3040, subd. (a)(1) ["In making an order granting custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent, consistent with Sections

37

3011 and 3020"]; *Burchard v. Garay* (1986) 42 Cal.3d 531, 540, fn. 11 [" 'Conduct by a custodial parent designed to frustrate visitation and communication may be grounds for changing custody' "].) We thus find no abuse of discretion.

We also conclude that mother's first argument is not dispositive. Mother argues the superior court erred in relying on section 3046, subdivision (b), because the provision has no application in this matter. Section 3046 pertains to a party's absence or relocation from the family residence as a custody or visitation factor. In its June 2018 order, the superior court wrote: "In considering the best interests of the child, the court may consider one party's attempts to interfere with the other party's regular contact with the child, pursuant to Family Code [section ]3046[, subdivision ](b)." Even if section 3046, subdivision (b), did not apply, the proposition stated by the court is supported by law, as explained in our analysis of the preceding argument. We thus conclude the superior court did not abuse its discretion.

Finally, mother argues the superior court's finding that her interference with father's and daughter's relationship constituted emotional abuse of daughter was unsupported because: (1) the court did not interview the child or take expert testimony prior to issuing its ruling; and (2) the superior court relied on "the dubious theory of 'parental alienation.' " Mother fails to cite any authority requiring a trial court to hear expert testimony and interview the child whose custody is in dispute before making findings as to emotional abuse, and we are aware of no such authority. Mother is correct that neither the superior court nor the custody counselor was able to interview daughter prior to issuance of the June 2018 order. But that was not for lack of trying. As explained in the June 2018 order, the court ordered mother to produce daughter at the June hearing with the anticipation that the custody counselor and the court would have the opportunity to interview daughter. Mother failed to produce daughter at the hearing and now seeks to benefit from her own wrongdoing. Mother does not challenge any of the factual findings made in support of the superior court's conclusion of emotional

38

abuse, nor does she argue that the facts do not support the superior court's conclusion. We thus see no basis for finding the superior court abused its discretion.

We do not address mother's argument that the theory of parental alienation "does not have strong empirical support and has been widely criticized when used in cases involving allegations of domestic violence." Mother's sole authority cited for this one sentence proposition is a research article identified in a footnote, a copy of which was not provided to this Court on appeal.

In the absence of evidence showing the superior court's decision did not advance the best interests of the child or was influenced by an erroneous understanding of applicable law or an unawareness of the full scope of its discretion, mother failed to carry her burden of showing the superior court abused its discretion. (*F.T. v. L.J.*, *supra*, 194 Cal.App.4th at pp. 15-16.)

DISPOSITION

The orders are affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

                                            /s/_____

                                            Robie, J.

I concur:

/s/_____
Mauro, J.

RAYE, P. J.


I concur fully in the judgment and opinion in this case and write separately only to emphasize a point that might be lost among the flurry of arguments regarding domestic violence made by the mother. The point is simply that the father's purported domestic violence is not a reason to overturn the trial court's well-reasoned judgment in this case. In ruling on the issue of custody and visitation, the superior court found the evidence presented was insufficient to find that domestic violence had occurred in California and no reason to deny him the custodial rights he sought. Oddly, though the father spent little time in Washington, going there only in his efforts to locate the child's mother who refused to disclose her whereabouts to him, a Washington judge, based on the mother's representations, concluded the father's conduct posed "a credible threat to the physical safety" of her and the child. The fact that the father was the subject of a restraining order cast him in a poor light, but the California court took the restraining order into account, finding that a restraining order does not equate to finding of domestic violence and there was no evidence in the record to support the mother's claim of domestic violence.

So this is not the story of a beleaguered mother, forced to flee with her child to Washington to escape the brutality of an abusive husband, only to now be denied rights of custody by an impassive court. Rather, it is the story of a mother who, according to the trial court, "has intentionally frustrated the parent-child relationship between [daughter] and her father," a mother who has manifested a "personality disorder" throughout the court proceedings. This is about a vengeful mother intent on depriving a father of any right to participate in raising a young child who is fully deserving of a life with both parents. The trial court's order provides the promise of such a future.


/s/_____
RAYE, P. J.


1